IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, )<br>)<br>      Plaintiff, )<br>)<br>  vs.        )<br>)<br>BRIAN HUGHS,      )<br>)<br>      Defendant. )<br>_____) | No. 2:21-cv-03254-DCN<br><br>**ORDER** |

    The following matter is before the court on defendant Brian Hughs's ("Hughs") motion to dismiss or stay, ECF No. 7. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

    This declaratory judgment action arises out of Hughs's demand for indemnity and advancement of legal fees under a directors' and officers' insurance policy (the "Policy") issued by plaintiff XL Specialty Insurance Company ("XL Specialty") to Hughs's former employers, Rhino Resources Partners, LP ("Rhino") and its subsidiary, Royal Energy Resources, Inc. ("Royal"). Issued in 2018, the Policy generally provides coverage for a loss resulting from a claim against an insured person for a wrongful act or for defense expenses resulting from an interview of an insured person. Hughs is a former director of Rhino and Royal and, as such, is an insured person under the Policy. Hughs alleges that he retained counsel in connection with an investigation by the Rhino board into allegations of another director's misconduct. Specifically, Hughs reported that another director engaged in an interested transaction affecting Rhino. Hughs has demanded that

1

XL Specialty pay over $466,000 in legal fees and expenses he allegedly incurred as a result of the investigation.

On September 17, 2019, Hughs filed suit against Rhino and Royal in the Court of Chancery in Delaware seeking advancement and indemnification of the legal fees and costs at issue under Rhino's limited partnership agreement and Royal's bylaws. See Hughs v. Rhino Resource Partners, LP, No. 2019-0744-JRS (Del. Chan.) (the "Delaware Action"). XL Specialty was not originally named a defendant in the Delaware Action. However, after Rhino declared bankruptcy, Hughs filed a motion for leave to amend the complaint to add XL Specialty as a defendant on November 23, 2021. See Delaware Action, Docket No. BL-41. On February 1, 2022, the Court of Chancery granted the motion. Id., Docket. No. BL-47.

On November 30, 2021, Hughs filed a motion to dismiss or stay the instant action. ECF No. 7. On December 30, 2021, XL Specialty responded in opposition, ECF No. 11, and on January 6, 2022, Hughs replied, ECF No. 12. As such, the motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

The Declaratory Judgment Act states that

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). In the context of a declaratory judgment action, the Supreme Court

concluded in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494–95 (1942), and later in Wilton, 515 U.S. at 288, that a district court's substantial discretion permits it to stay or dismiss an action seeking a declaratory judgment in favor of an ongoing court case. Such discretion, however, "is not unbounded," and a district court may refuse to entertain a declaratory judgment action only "for good reason." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)) (internal quotation marks omitted). A court should generally exercise jurisdiction over a declaratory judgment claim "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Quarles, 92 F.2d at 325.

When a related proceeding is pending in state court, as is the case currently before the court, in addition to the Quarles factors, the decision of a district court over whether to exercise jurisdiction over a declaratory judgment action should be governed by considerations of "federalism, efficiency, and comity." Penn-Am Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004) (internal citation omitted). Courts often look to four factors when making this determination:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ] (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law" [; and (iv)] whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994) (internal citations omitted) (the "Nautilus factors"). As noted by the Fourth Circuit, "a district court should not treat the [Nautilus] factors as a mechanical checklist, but rather should apply them flexibly in light of the particular circumstances of each case." VRCompliance LLC v. HomeAway, Inc., 715 F.3d 570, 573 (4th Cir. 2013) (internal quotations omitted).

### III.   DISCUSSION

Hughs requests that the court decline to assert its discretionary jurisdiction over the instant declaratory judgment action or, in the alternative, stay the action until the Delaware Action is concluded.  In support of his request, Hughs argues that the Delaware Action is parallel and that the factors the Fourth Circuit espoused in Nautilus, 15 F.3d at 375, favor abstention.  XL Specialty argues that the Delaware Action is not parallel and that the Nautilus factors favor the court's retention of the case.  Upon consideration, the court agrees with Hughs.

XL Specialty argues that there is no parallel action because, at the time of the parties' briefings on the motion, XL Specialty was not yet a defendant in the Delaware Action.  Because the Delaware Court of Chancery has since granted Hughs's motion to add claims against XL Specialty relating to the instant insurance coverage dispute, the court finds XL Specialty's arguments in that regard moot.  Therefore, the court need only determine whether it should exercise jurisdiction over this declaratory judgment action based on federalism, efficiency, and comity considerations and the Nautilus factors that inform the same.  Upon review, the court finds that these considerations weigh decidedly in favor of abstention.

### A. State's Interest

The first Nautilus factor, the strength of the state's interest in deciding the matter, does not weigh heavily for either side. Hughs argues that Delaware has an interest in this action because it involves a Delaware registered insurance company, XL Specialty, and an insurance policy it issued to other Delaware entities, Royal and Rhino. Therefore, Hughs maintains that Delaware has a strong interest in resolving corporate governance and insurance coverage disputes related to these Delaware-incorporated entities. Delaware certainly has an interest in resolving disputes affecting entities incorporated in its state and declaring the rights of parties in connection with insurance agreements formed in the state. Nevertheless, the Fourth Circuit has noted that a state's interest in having its courts decide a controversy is not particularly significant when the state law issues are standard and unlikely to break new ground. Penn-Am. Ins. Co. v. Coffey, 368 F.3d 409, 414 (4th Cir. 2004). "[Q]uestions of state law raised in [a] federal action are not difficult or problematic" when "they involve the routine application of settled principles of insurance law to particular disputed facts." Great Am. Ins. Co. v. Gross, 468 F.3d 199, 211 (4th Cir. 2006). In this case, Hughs has not argued that the case presents any questions of state law that are difficult, complex, or unsettled. Rather, it appears that the case requires the application of settled Delaware principles of insurance law and routine contract interpretation of the Policy. Therefore, Delaware's interest in resolving this action is not sufficiently strong to push the needle one way or the other. Nevertheless, "[a]lthough [the fact that Delaware law governs] alone provides no reason for declining to exercise federal jurisdiction, when considered in conjunction with the other Nautilus factors, the fact that state law controls the questions before the court

militates in favor of the [court's] decision to decline jurisdiction." Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 967 (4th Cir. 1994) (internal citation and quotations omitted).

### B. Efficiency

The court next finds that the second Nautilus factor strongly favors abstention because the insurance coverage declaratory claims raised in this action can more efficiently be resolved in the Delaware Action. "In evaluating . . . efficiency concerns, the Supreme Court has directed [federal courts] to focus primarily on 'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s]' that are already 'pending in the state court[s].'" Nautilus, 15 F.3d at 378 (quoting Brillhart, 316 U.S. at 495). "This in turn requires careful inquiry into 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding.'" Id. at 379–80 (quoting Brillhart, 316 U.S. at 495). Both the instant action and the Delaware Action stem from the same set of operative facts—namely Hughes's alleged expenditures incurred in connection with an internal investigation of another officer's alleged misconduct at Rhino. Because the Delaware Court of Chancery granted Hughes's motion to amend his complaint, the questions of whether and to what extent the Policy provides coverage for those expenditures are now expressly at issue in two actions. It would be a waste of judicial and party resources to have this case proceed on a parallel track with the Delaware Action. Indeed, "efficiency dictates that resolution of issues stemming from one controversy should be resolved by one court." Beach Cove Assocs. v. U.S. Fire Ins.

Co., 903 F. Supp. 959, 963 (D.S.C. 1995) (citing Cont'l Cas. Co., 35 F.3d at 968). Because the Delaware Action has been pending for over two years, the Delaware Court of Chancery is already familiar with the facts underlying both actions.  Moreover, the Delaware Action is more comprehensive, with additional parties and claims related to the expenditures at issue.  The Delaware court, then, is better situated to resolve the claims pending in this action because it must also adjudicate additional claims and issues that are related but beyond the scope of this action.  Therefore, this factor strongly favors abstention.  See, e.g., Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 258 (4th Cir. 1996) ("The state litigation . . . could resolve all issues, and . . . [c]oncern for efficiency and judicial economy clearly support the district court's decision [to abstain]."); Riley v. Dozier Internet L., PC, 371 F. App'x 399, 403 (4th Cir. 2010) ("This court's interference with the pending state court proceeding would therefore produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigation, and expending limited judicial resources.").

### C.  Unnecessary Entanglement

The court finds that the third Nautilus factor—unnecessary entanglement between the federal and state court systems—further tips the scale in favor of abstention. "Entanglement is all the more likely where, as here, common issues 'are already being litigated by the same parties in the related state court action.'"  Riley, 371 F. App'x. at 403 (quoting Nautilus, 15 F.3d at 379).  "In such cases, there is a real risk that the state court's prior resolution of overlapping issues would entitle those issues to preclusive effect . . . ."  Id.  Both parties in this federal case—Hughs and XL Specialty—are now parties in the Delaware proceeding.  And, as discussed above, the claims and issues in

7

both cases clearly overlap. Therefore, if the court were to resolve the coverage issue in this action, its decision on that issue would likely have a preclusive effect in state court. See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998) ("[S]ince both actions raise the same core issues of law and fact, and both actions aimed at determining the rights of the parties under the insurance Policy, potential entanglement between the state and federal courts was a genuine possibility."). "Such issue [and claim] preclusion will likely 'frustrate the orderly progress' of state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution." Id. (quoting Phx. Ins. Co. v. Harby Marina, Inc., 294 F. Supp. 663, 664 (N.D. Fla. 1969)). "Additionally, the state court will likely have to consult federal law to ascertain the preclusive principles at work, see Harnett v. Billman, 800 F.2d 1308, 1312–13 (4th Cir. 1986), thereby creating further entanglement." Id. at 240. Therefore, this factor favors declining jurisdiction over the federal action.

### D. Procedural Fencing

The final Nautilus factor is neutral in this case. This factor requires consideration of "whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achiev[e] a federal hearing in a case otherwise not removable." Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998) (alteration in original) (internal quotation marks omitted). The Fourth Circuit has specified that procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." Gross,

468 F.3d at 212; see also Nexsen Pruet, LLC v. Westport Ins. Corp., 2010 WL 3169378, at *4 (D.S.C. Aug. 5, 2010) ("[T]he procedural fencing the Fourth Circuit appears concerned with . . . relate[s] to manipulation of forum in the state-versus-federal context . . . ." (emphasis added)).  Hughs does not argue that XL Specialty has engaged in procedural fencing in filing the instant action, and the court has no reason to find that this action was filed for any improper purpose.  At the time XL Specialty filed its complaint with this court, it was not a defendant in the Delaware Action, and XL Specialty's coverage obligations under the Policy were not being addressed in that action.  Therefore, by all appearances, this separate and independent action was filed in a proper effort to obtain prompt resolution of that coverage issue.  See Gross, 468 F.3d at 212.

XL Specialty, on the other hand, argues that Hughs's actions are characteristic of procedural fencing, such that this factor should favor retention of the federal action.  It explains that Hughs could have added XL Specialty as a defendant in the Delaware Action as early as December 2020, but only did so six weeks after this federal action was filed.  However, this Nautilus factor asks the court to consider whether the instant declaratory judgment action is being used as a device for procedural fencing, and XL Specialty cites no caselaw to support its argument that Hughs's attempt to litigate the coverage issue in the Delaware Action constitutes procedural fencing.  Even if the factor were to warrant such a consideration, the court is not convinced.  The Delaware Action is the first-filed and more comprehensive action of the two.  The court does not find that it was improper for Hughs to add the related insurance coverage claims against XL Specialty to that action to resolve all related claims before the same forum, even if that action was precipitated by XL Specialty's pursuit of the instant action.

On balance, the Nautilus factors tip in favor of dismissing XL Specialty's claim for declaratory relief. Allowing only the Delaware Action to proceed eliminates the possibility of unnecessary overlap, entanglement, and inefficiency. The court further finds that this result best serves the purpose of the Declaratory Judgment Act. "[T]he Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue." Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1284 (Fed. Cir. 2007); see also E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852, 854 (7th Cir. 1937) (noting that Congress intended the Declaratory Judgment Act to prevent the "avoidable damages" that would accrue while an aggrieved party purposefully let a dispute fester rather than file suit). As Hughs has now sued XL Specialty in a related action for the precise issue XL Specialty seeks to adjudicate, that purpose is rendered moot.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss and dismisses the action without prejudice in favor of the related state court proceeding.

**AND IT IS SO ORDERED.**

                                        **DAVID C. NORTON**
                                        **UNITED STATES DISTRICT JUDGE**

**February 14, 2022**
**Charleston, South Carolina**